IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LORI SHICKEL, both individually and as Mother and Next Friend of Jordan Shickel, a Minor,<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BLITZ U.S.A., INC.; LAM 2011 HOLDINGS, LLC, f/k/a BLITZ HOLDINGS, LLC; KINDERHOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC; WAL-MART STORES, INC.; WAL-MART STORES EAST, INC.; and WAL-MART STORES EAST, L.P.,<br>　　　　　　Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, a minor, ("Plaintiff") complaining of Blitz U.S.A., Inc.; LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC; Kinderhook Capital Fund II, L.P.; Blitz Acquisition Holdings, Inc.; Blitz Acquisition, LLC; Blitz RE Holdings, LLC; F3 Brands, LLC (collectively "Blitz"); Wal-Mart Stores, Inc.; Wal-Mart Stores East, Inc.; and Wal-Mart Stores East, L.P. (collectively "Wal-Mart"), and alleges the following:

### JURISDICTION AND IDENTIFICATION OF THE PARTIES

1.　　This lawsuit stems from allegations of, inter alia, product liability and negligence. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Jordan Shickel, a minor, sustained significant and permanent personal injuries and through

his mother Lori Shickel, is seeking well in excess of $75,000.00, exclusive of interest and costs, against the Defendants in this matter and diversity of citizenship exists between Plaintiff and Defendants.

2. Plaintiff Lori Shickel and her minor son Jordan Shickel are residents of Normal, Illinois.

3. Defendant Blitz U.S.A., Inc. is an Oklahoma corporation that maintains its principal place of business in the State of Oklahoma.

4. Defendant LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) is a Delaware limited liability company.

5. Defendant Kinderhook Capital Fund II, L.P. is a Delaware limited partnership.

6. Defendant Blitz Acquisition Holdings, Inc. is a Delaware corporation.

7. Defendant Blitz Acquisition, LLC is a Delaware limited liability company.

8. Defendant Blitz RE Holdings, LLC is a Delaware limited liability company.

9. Defendant F3 Brands, LLC is a Delaware limited liability company.

10. Defendant Wal-Mart Stores, Inc. is a Delaware corporation that does business in the State of Illinois and maintains its principal place of business in the State of Arkansas.

11. Defendant Wal-Mart Stores East, Inc. is an Arkansas corporation that does business in the State of Illinois and maintains its principal place of business in the State of Arkansas.

12. Defendant Wal-Mart Stores East, L.P. is a Delaware limited partnership that does business in the State of Illinois and maintains its principal place of business in the State of Arkansas.

13. Venue is proper in the Central District of Illinois, Springfield Division, pursuant to 28 U.S.C. Section 1391(a)(2) as the underlying tortious conduct occurred in the Central District of Illinois and minor Jordan Shickel, received substantial medical care at Memorial Medical Center, in Springfield, Illinois as a result of the significant injuries that he sustained.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

14. Blitz is in the business of designing, marketing, manufacturing and selling portable plastic gasoline cans.

15. Blitz designed, manufactured, marketed and sold a model of gas can known as the Blitz Pull 'N Pour Gas Can (hereinafter "can" or "subject gas can").

16. The can was sold by Blitz to Wal-Mart for distribution across the State of Illinois, including the Central District and within the Springfield Division.

17. The subject gas can was purchased from Wal-Mart prior to October 11, 2009.

18. On or about October 11, 2009, Jordan Shickel was on a campout at the Yogi Bear Jellystone Park, Goodfield, Illinois, with his mother, Lori Shickel and other family members. After pouring gas from the subject gas into a designated campsite fire pit, Jordan Shickel set the gas can on the ground near said fire pit, when a flame flash from the fire pit to the gas can's spout caused a flame to emit from the gas can spout.

19. As Jordan Shickel observed a flame being emitted from the spout, Jordan Shickel attempted to extinguish the flame by blowing on the flame as it was emitting from the gas can spout.

20.     The gas can then exploded and Jordan Shickel was covered in burning liquid gasoline.

21.     Lori Shickel then extinguished Jordan Shickel's burning body.

22.     Jordan Shickel suffered third degree burns over more then 50 percent of his body. Jordan Shickel was conscious and alert while experiencing excruciating pain and while waiting for medical personnel to arrive. Jordan Shickel spent months in various hospital burn units, suffering through at least six surgical procedures, multiple skin grafts and almost daily debridement procedures. As a result, Jordan Shickel is permanently scarred and disfigured both physically and psychologically.

## CLAIMS FOR RELIEF

## COUNT I – STRICT LIABILITY

NOW COMES Plaintiff Lori Shickel, both individually and as mother and next friend of Jordan Shickel, a minor, and complaining of Defendant Blitz U.S.A., Inc., as follows:

23.     Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, her minor son, re-alleges, reasserts and incorporates Paragraphs 1 through and inclusive of Paragraph 22 as if fully set forth herein.

24.     Blitz is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling the can to consumers and placing it within the stream of commerce. Blitz designed, manufactured, assembled, marketed, distributed and sold the can that caused Jordan Shickel's injuries.

25.     At all relevant times, Blitz had a duty to design, manufacture, assemble, market, distribute and sell a can which was not unreasonably dangerous.

4

26. Blitz expected the can to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold. The can did in fact reach Jordan Shickel without a substantial change in the condition in which it was originally sold by Blitz and unexpectedly failed under ordinary and foreseeable use. The can was not modified or altered after it left Defendant Blitz' control, and Jordan Shickel was utilizing the can in a foreseeable manner which was both known to and reasonably expected by Blitz.

27. At the time the can left Defendant Blitz' control, and at all times complained of herein, safer alternative designs, incorporated into other Blitz gas cans, were feasible to eliminate the risk of the subject gas can exploding without substantially impairing the usefulness and intended purpose of the product.

28. The can was defective and unsafe for its intended purposes at the time it left Defendant Blitz' control in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented Jordan Shickel's catastrophic burn injuries as well as the catastrophic burn injuries of countless others.

29. Blitz failed to act as a reasonable manufacturer by failing to implement a feasible alternative design to prevent foreseeable injuries and deaths from the lack of a flame arrestor on its gas cans.

30. Blitz failed to act as a reasonable manufacturer by failing to produce a gas can closure that would prevent flammable gas fumes and liquid from escaping the can and allowing the gasoline to age into the explosive limit.

31. Blitz knew or should have known of the can's susceptibility to flashback and explosion, which occurs when gasoline vapors outside the can ignite and the flames follow

the vapor trail back into the can, causing an internal explosion within the can and a release of burning gasoline liquid and vapors and/or a flame thrower effect where burning vapors and liquid explode out of the can. Both phenomena cause victims to be immolated.

32.     The Blitz gas can was unreasonably dangerous and defective in its design and manufacture because it did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the present case and/or other existing technology to prevent explosion. Blitz failed to warn Plaintiff of the defective condition of the can and also that cans such as the subject gas can may explode if there is a flashback that follows the gasoline vapors back to the can.

33.     A flame arrestor, sometimes called a flame arresting screen, flash arrestor or spark arrestor, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents a spark or flame from entering the container and igniting and causing an internal explosion of the can. The device is essentially a filter screen made out of either a perforated metal disk or a wire mesh screen. Flame arrestors have been in existence for over two centuries and have a variety of commercial applications ranging from water heaters to rum bottles to other gasoline cans.

34.     The efficacy of flame arrestors has been known to the gasoline can manufacturing industry for decades. Manufacturers of portable gas cans have been aware of their existence and have included them in their design since before the 1920's. Blitz even had a flame arrestor on its metal cans but chose to leave off the device when it began manufacturing its cheap plastic line of cans. Blitz even investigated flame arresting technology but never got around to putting it into its cans despite multiple ongoing lawsuits involving severely burned individuals.

35.     Since at least 1994, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

36.     Blitz has known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback, i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails back inside the container causing it to explode and/or spew flames and burning gasoline.

37.     Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the subject gas can far exceeded any utility and/or benefits associated with its design.

38.     Despite a wealth of available scientific knowledge, Blitz has made, and continues to make, a conscious, willful, wanton and reckless decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate a well-known safety devices and/or container designs into its portable gas cans, despite the fact that these safety devices and/or designs are economically and technologically feasible.

39.     Additionally, Blitz' can was manufactured in a manner that violated basic quality and testing standards, making the container more likely to rupture.

40.     The can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was defective and/or unreasonably dangerous when sold.

41.     The can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was the direct and proximate cause of Jordan's injuries and damages.

42. As a direct and proximate result of Blitz' acts and/or omissions in the design, manufacture, assembly, marketing, distribution, and sale of the can as alleged, Jordan Shickel suffered severe personal injuries, including, but not limited to, severe burns, severe physical pain and suffering, permanent scarring. psychological impairment, vocational impairment and emotional distress and has incurred significant medical expenses in the past and will incur significant medical expenses in the future due to his injuries.

43. In order to avoid liability in civil cases for damages such as this instant case, Blitz has destroyed and/or otherwise spoliated evidence, committed perjury and violated discovery rules and orders in attempt to prevent plaintiffs' allegations in this and other similar cases and based upon the entirety of Blitz's actions as alleged in this paragraph and those preceding it, Plaintiff reserves the right to amend the Complaint to request an award of punitive damages once discovery is completed.

WHEREFORE the Plaintiff asks for a judgment against Defendant Blitz in an amount in excess of $75,000.00, exclusive of interest and costs.

## COUNT II – NEGLIGENCE

NOW COMES Plaintiff Lori Shickel, both individually and as mother and next friend of Jordan Shickel, a minor, and complaining of Defendant Blitz U.S.A., Inc., as follows:

44. Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, her minor son, re-alleges, reasserts and incorporates Paragraphs 1 through and inclusive of Paragraph 43 as if fully set forth herein.

45. Blitz owed consumers and/or foreseeable users, including Lori Shickel and Jordan Shickel, the duty of reasonable care in its design, manufacture, assembly, marketing, distribution, and sale of the subject gas can.

46. Blitz ignored and/or breached that duty by its following negligent acts and/or omissions:

   (a) Failed to design and produce a reasonably safe can;

   (b) Designed, manufactured, assembled, marketed, distributed, and sold a can that was defective;

   (c) Placed into the stream of commerce a can that was defective in design and manufacture;

   (d) Placed into the stream of commerce a can that was defective in that it failed to contain adequate warnings and instructions;

   (e) Placed into the stream of commerce a can that was unfit for its intended and anticipated use;

   (f) Placed into the stream of commerce a can that was likely to and did cause injury during its ordinary and/or foreseeable use;

   (g) Placed into the stream of commerce a can that contained manufacturing defects;

   (h) Failed to appropriately investigate and incorporate a flame arrestor in the product design;

   (i) Failed to properly test its can and prototypes thereof regarding the risk of internal explosion and/or the use flame arresting material;

   (j) Failed to actively seek information regarding incidents involving explosion and/or internal combustion of gas cans and/or gasoline injuries;

   (k) Failed to take subsequent remedial measures such as post-sale warnings and/or to recall the can after learning, knowing, or having reason to know of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

   (l) Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the can to the Consumer Product Safety Commission;

   (m) Sold the can when it knew it posed an unreasonable risk of flammable vapor ignition, flashback and explosion to users beyond that understood or

contemplated by the average reasonable consumer, and the risks associated with this design outweighed its utility;

(n)  Failed to investigate consumer use of its cans with regard to starting fires and/or exposure to ignition sources and failed to incorporate the knowledge it did have into the design of its can through a standard FEMA design analysis;

(o)  On at least two occasions, Blitz halted projects to equip its can with flame arrestors for financial and strategic legal reasons as opposed to safety considerations; and

(p)  Blitz spoliated evidence and failed to issue a litigation hold during ongoing litigation which would tend to prove Plaintiff's allegations that Blitz is liable to Plaintiff.

47.  As a direct and proximate result of Blitz' negligent acts and/or omissions, the can that caused Jordan Shickel's injuries was placed into the stream of commerce in a defective and unreasonably dangerous condition, with complete indifference to, and in willful, conscious disregard for the safety of Jordan Shickel and other foreseeable plaintiffs.

48.  Jordan Shickel's injuries and the manner in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, national publications, media reports and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering Blitz's portable gas cans.

WHEREFORE the Plaintiff asks for a judgment against Defendant Blitz in an amount in excess of $75,000.00, exclusive of interest and costs.

## COUNT III – BREACH OF WARRANTY

NOW COMES Plaintiff Lori Shickel, both individually and as mother and next friend of Jordan Shickel, a minor, and complaining of Defendant Blitz U.S.A., Inc., as follows:

49. Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, her minor son, re-alleges, reasserts and incorporates Paragraphs 1 through and inclusive of Paragraph 48 as if fully set forth herein.

50. Blitz, by and through the sale of its portable gas cans, expressly and impliedly warranted to the consumer and/or foreseeable users, such as Lori Shickel and Jordan Shickel, that the container was fit for its ordinary and foreseeable purposes.

51. Lori Shickel and Jordan Shickel made ordinary use of the container in reliance on said warranties.

52. Contrary to said warranties, the portable gas can was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

53. Blitz breached its express and implied warranties by one or more of the following respects, among others:

   (a) Failure of the gas can itself and by improper marketing to an unknowing consumer market;

   (b) Failure to equip the gas can with a flame arrestor and/or other safety devices to make the gas can safe for its foreseeable environment;

   (c) Failed to provide adequate warnings;

   (d) The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility; and given that it was intended for use in environments where it is foreseeable that ignition sources will be present, the can was not fit for its ordinary purpose;

   (e) Blitz knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it safe for its foreseeable environment;

   (f) Failure to recall and/or repair the product;

11

(g)  Placed on the market a gas can which was unfit for its intended use; and

(h)  Placed on the market a gas can which was not safe for the ordinary purpose for which it was sold.

54. Jordan Shickel's injuries and the manner in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from the industry, national publications, media reports, and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering Blitz' portable gas cans.

55. As a direct and proximate result of said breach of warranty, Lori Shickel and Jordan Shickel suffered the injuries and harms outlined in this Complaint.

WHEREFORE the Plaintiff asks for a judgment against Defendant Blitz in an amount in excess of $75,000.00, exclusive of interest and costs.

## COUNT IV

NOW COMES Plaintiff Lori Shickel, both individually and as mother and next friend of Jordan Shickel, a minor, and complaining of Defendants Blitz U.S.A., Inc., LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC, Kinderhook Capital Fund II, L.P., Blitz Acquisition Holdings, Inc., Blitz Acquisition, LLC, Blitz RE Holdings, LLC, and F3 Brands, LLC, as follows:

56. Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, her minor son, re-alleges, reasserts and incorporates Paragraphs 1 through and inclusive of Paragraph 55 as if fully set forth herein.

57. On September 21, 2007, the Elmburg family, which owned Defendant Blitz U.S.A., Inc., announced that they had sold the company to an investment group comprised

of Kinderhook Industries, LLC, a New York-based private equity firm, and Rocky J. Flick, Blitz U.S.A., Inc.'s current CEO.

58. Coinciding with the sale of Defendant Blitz U.S.A., Inc. to Kinderhook Industries and Mr. Flick, a complicated and opaque corporate ownership structure was instituted by its new owners, comprised of various Delaware limited liability companies, corporations, and limited partnerships.

59. Defendant Blitz U.S.A., Inc. is currently a wholly owned subsidiary of Blitz Acquisition, LLC.

60. Defendant F3 Brands, LLC is a wholly owned subsidiary of Blitz U.S.A., Inc.

61. Defendant Blitz RE Holdings, LLC is a wholly owned subsidiary of Blitz Acquisition, LLC.

62. Defendant Blitz Acquisition, LLC is a wholly owned subsidiary of Blitz Acquisition Holdings, Inc.

63. Defendant Blitz Acquisition Holdings, Inc. is a wholly owned subsidiary LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC.

64. Defendant LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC, is a wholly or partially owned subsidiary of Defendant Kinderhook Capital Fund II, L.P.

65. Defendants LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC, and Kinderhook Capital Fund II, L.P. exercise complete dominion over the subsidiary entities listed above to such an extent that they are mere instrumentalities and conduits for these two companies.

66. Defendants LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC, and Kinderhook Capital Fund II, L.P. have used their control to divert the corporate assets and

profits of Defendant Blitz U.S.A., Inc. to the various shell companies listed above in order to leave Blitz U.S.A., Inc. undercapitalized and without the funds to pay any lawful judgment against it.

67. Plaintiff seeks to pierce the corporate veil in order to hold all of these entities liable for any judgment she may obtain against Blitz U.S.A., Inc.

WHEREFORE the Plaintiff asks for a judgment against Defendants Blitz U.S.A., Inc., LAM 2011 Holdings, LLC. f/k/a Blitz Holdings, LLC, Kinderhook Capital Fund II, L.P. Blitz Acquisition Holdings, Inc., Blitz Acquisition, LLC, Blitz RE Holdings, LLC and F3 Brands, LLC, in an amount in excess of $75,000.00, exclusive of interest and costs.

## COUNT V – STRICT LIABILITY

NOW COMES Plaintiff Lori Shickel, both individually and as mother and next friend of Jordan Shickel, a minor, and complaining of Defendant WAL-MART, as follows:

68. Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, her minor son, re-alleges, reasserts and incorporates Paragraphs 1 through and inclusive of Paragraph 67 as if fully set forth herein.

69. Wal-Mart marketed, distributed and sold the can which was defectively designed and unreasonably dangerous for its anticipated, intended and foreseeable use in the following ways:

    (a)    Wal-Mart marketed and sold the can without a flame arrestor and/or other safety devices despite knowledge of the risks inherent in such a can;

    (b)    Wal-Mart participated in and impacted the design of Blitz's can, and in particular the design of Blitz gas can closures, and knew that it had the ability to impact the design of Blitz's can;

    (c)    Wal-Mart continued to sell the Blitz can even after Blitz and Wal-Mart were sued over its design defects, providing Wal-Mart with knowledge of this

issue;

(d) Wal-Mart knew or should have known at the time it supplied the can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility;

(e) Wal-Mart knew or should have known of other available gas cans that were available to safeguard consumers from the foreseeable dangers associated with gasoline use and to significantly reduce and/or eliminate the risk of flammable vapor ignition, and Wal-Mart failed to offer such cans for sale, and instead sold the defective Blitz can to Plaintiff's friend, and knew of incidents where Blitz gasoline cans such as the one Wal-Mart sold to Plaintiff's friend had exploded, causing burn injuries;

(f) Wal-Mart failed to exercise its contractual right to recall defective Blitz products and failed to classify the Blitz gas can as a high risk product; and

(g) With the knowledge that plastic gas cans not equipped with flame arrestors were exploding, Wal-Mart sought on at least two occasions to significantly increase sales to customers and decrease its product cost from Blitz as opposed to insisting on a fix to prevent its customers from suffering severe burn injuries and even dying.

70. Wal-Mart had actual knowledge of the defects in the can and other Blitz cans as alleged above, Wal-Mart had actually joked about the dangers of the can at its management and supplier meetings, and Wal-Mart put the can into the stream of commerce, acting with complete indifference to, and in willful, conscious and reckless disregard for the safety of Jordan Shickel and other foreseeable plaintiffs. After discovery is conducted, Plaintiff reserves the right to seek leave of the Court to amend her Complaint to seek punitive damages against Wal-Mart.

71. Wal-Mart had actual or constructive knowledge of the defective conditions of the subject gas can alleged above at the time it sold the can which ultimately caused Jordan Shickel's injuries.

15

72.   As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein and as a direct and proximate result of the gas can's defective design, Wal-Mart is liable to Plaintiff pursuant to the provisions of Section 402A of the Restatement (Second) of Torts (1965).

WHEREFORE the Plaintiff asks for a judgment against Defendant WAL-MART in an amount in excess of $75,000.00, exclusive of interest and costs.

### COUNT VI – NEGLIGENCE

NOW COMES Plaintiff Lori Shickel, both individually and as mother and next friend of Jordan Shickel, a minor, and complaining of Defendant WAL-MART, as follows:

73.   Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, her minor son, re-alleges, reasserts and incorporates Paragraphs 1 through and inclusive of Paragraph 72 as if fully set forth herein.

74.   Wal-Mart owed consumers and/or foreseeable users, including Lori Shickel and Jordan Shickel, the duty of reasonable care in its marketing, distribution and sale of the Blitz can.

75.   Wal-Mart failed to act as a reasonable retailer, knowingly marketing, selling and even seeking to increase the sales of a product that caused severe burn injuries and/or death to Wal-Mart consumers at the time the can was sold by Wal-Mart.

76.   As a direct and proximate result of Wal-Mart's negligence, the can was marketed, distributed and sold in a defective condition, and it was unreasonably dangerous when used as intended and when put to reasonably anticipated and/or foreseeable use by persons such as Lori Shickel and Jordan Shickel.

77.   Jordan Shickel's injuries, and the manner in which they occurred, were

reasonably foreseeable to Wal-Mart, which knew or should have known that individuals such as Jordan Shickel were being severely burned when encountering Blitz gas containers, including the subject can.

78. As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein, Lori Shickel and Jordan Shickel suffered the injuries and harms outlined in this Complaint.

WHEREFORE the Plaintiff asks for a judgment against Defendant WAL-MART in an amount in excess of $75,000.00, exclusive of interest and costs.

### COUNT VII – BREACH OF WARRANTY

NOW COMES Plaintiff Lori Shickel, both individually and as mother and next friend of Jordan Shickel, a minor, and complaining of Defendant WAL-MART, as follows:

79. Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, her minor son, re-alleges, reasserts and incorporates Paragraphs 1 through and inclusive of Paragraph 78 as if fully set forth herein.

80. Wal-Mart is a merchant of gas cans.

81. In selling and placing the gas can into the stream of commerce, Wal-Mart impliedly warranted that the subject gas can was merchantable and fit for the ordinary, anticipated and foreseeable purposes for which it was intended to be used.

82. Wal-Mart breached said implied warranty in one or more of the following respects, among others:

(a) Wal-Mart sold a gas can without a flame arrestor and/or other safety devices, thereby making it unfit for ordinary use, given that Wal-Mart knew it would be exposed to potential ignition sources;

(b) Wal-Mart participated in and had impacted the design of Blitz's gas cans and

had the power to do the same, which it had exerted on Blitz;

(c)   Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas containers it sold despite Wal-Mart's extensive knowledge of gasoline given its sale of the same;

(d)   Wal-Mart sold Blitz gas cans that contained manufacturing defects;

(e)   Wal-Mart knew or should have known as the time it supplied the gas can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility, thereby rendering the can unfit for ordinary use by average consumers; and

(f)   Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor ignition, and failed to offer such cans for sale and instead sold the defective subject gas can to Plaintiff's friend which was not appropriate for its ordinary anticipated use.

83.   As a direct and proximate result of Wal-Mart's breach of warranty, Lori Shickel and Jordan Shickel were injured.

WHEREFORE the Plaintiff asks for a judgment against Defendant WAL-MART in an amount in excess of $75,000.00, exclusive of interest and costs.

## COUNT VIII - FAMILY EXPENSE ACT

**BLITZ U.S.A., INC; LAM 2011 HOLDINGS, LLC f/k/a BLITZ HOLDINGS, LLC, HOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC; WAL-MART STORES, INC.; WAL-MART STORES EAST, INC.; and WAL-MART STORES EAST, L.P.**

NOW COMES Plaintiff Lori Shickel, both individually and as mother and next friend of Jordan Shickel, a minor, and complaining of Defendants BLITZ U.S.A., INC; LAM 2011 HOLDINGS, LLC f/k/a BLITZ HOLDINGS, LLC, KINDERHOOK CAPITAL FUND II, L.P.;

BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC, WAL-MART STORES, INC.; WAL-MART STORES EAST, INC.; and WAL-MART STORES EAST, L.P., as follows:

84. Plaintiff Lori Shickel, both individually and as Mother and Next Friend of Jordan Shickel, her minor son, re-alleges, reasserts and incorporates Paragraphs 1 through and inclusive of Paragraph 83 as if fully set forth herein.

85. At all times pertinent herein, LORI SHICKEL was the mother of Plaintiff JORDAN SHICKEL, a minor.

86. As a direct and proximate result of the injuries sustained by JORDAN SHICKEL, a minor, LORI SHICKEL has become obligated for various medical expenses which have been incurred in the past and which will occur in the future pursuant to the provisions of 750 ILCS 65/15.

87. Plaintiff LORI SHICKEL, requests each and every Defendant to reimburse her for all past and future medical expenses which have been incurred in the past and which will be incurred in the future pursuant to the provisions of 750 ILCS 65/15.

WHEREFORE, the Plaintiff asks for a judgment against Defendants BLITZ U.S.A., INC; LAM 2011 HOLDINGS, LLC f/k/a BLITZ HOLDINGS, LLC, KINDERHOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC, WAL-MART STORES, INC.; WAL-MART STORES EAST, INC.; and WAL-MART STORES EAST, L.P. for a sum in excess of $75,000.00, exclusive of interest and costs.

## TRIAL BY JURY

Pursuant to FRCP 38, Plaintiff hereby demands a Jury Trial.

Respectfully submitted, this the 10th day of October, 2011.

Michael T. Mullen
Paul B. Episcope, LLC
Suite 300
77 West Washington Street
Chicago, IL 60602
Phone (312) 782-6636
Fax (312) 782-1114
mtm@episcopeltd.com