**E-FILED**
Tuesday, 29 November, 2011  05:09:10 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LORI SHICKEL, both individually and<br>as Mother and Next Friend of JORDAN<br>SHICKEL, a Minor,<br><br>      Plaintiffs,<br><br>v.<br><br>BLITZ U.S.A., INC; LAM 2011<br>HOLDINGS, LLC, f/k/a BLITZ<br>HOLDINGS, LLC; KINDERHOOK<br>CAPITAL FUND II, L.P.; BLITZ<br>ACQUISITION HOLDINGS, INC.;<br>BLITZ ACQUISITION, LLC;<br>BLITZ RE HOLDINGS, LLC;<br>F3 BRANDS, LLC;<br>WAL-MART STORES, INC.;<br>WAL-MART STORES EAST, INC.;<br>AND WAL-MART STORES EAST, L.P.<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:11-cv-03380-SEM-JAG |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT KINDERHOOK CAPITAL FUND II, L.P.'S
## <u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY THE COMPLAINT</u>

**FRESHFIELDS BRUCKHAUS DERINGER US LLP** (LEAD COUNSEL)

Timothy P. Harkness (admission pending)
Pamila Gudkov (admission pending)
601 Lexington Avenue, 31st Floor
New York, New York 10022
Tel:  (212) 277-4000
Fax:  (212) 277-4001

**HEPLERBROOM LLC**

Stephen R. Kaufmann, #03126728
Michael P. Murphy, #06284342
400 South Ninth Street Suite 100
Springfield, IL 62701
Tel: (217) 993-7146
Fax: (217) 528-3964

*Attorneys for Defendant Kinderhook Capital Fund II, L.P.*

## <u>TABLE OF CONTENTS</u>

**PAGE**

PRELIMINARY STATEMENT ........................................................................1

FACTS ..........................................................................................................2

ARGUMENT ................................................................................................3

I.    DISMISSAL PURSUANT TO RULE 12(b)(2) IS PROPER BECAUSE THE COURT LACKS JURISDICTION OVER KINDERHOOK ..................................3

    A.    Kinderhook Lacks Minimum Contacts With Illinois To Justify Specific Jurisdiction................................................................................4

    B.    Kinderhook Is Not An Alter Ego Of Blitz And Is Therefore Not Subject To Derivative General Jurisdiction Under Illinois Law .............................5

II.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) AS IT FAILS TO SET FORTH SUFFICIENT BASIS TO JUSTIFY PIERCING THE CORPORATE VEIL ....................................................................6

III.  EVEN IF CLAIMS AGAINST KINDERHOOK ARE NOT DISMISSED, THEY SHOULD BE STAYED PURSUANT TO 11 U.S.C. § 362(a)..............................9

    A.    Veil Piercing Claims Are Property Of The Estate And Are Automatically Stayed........................................................................................9

    B.    Kinderhook's Alleged Derivative Liability Constitutes An Identity Of Interest And Provides An Independent Ground For Extending the Automatic Stay...........................................................................11

IV.   BECAUSE DEBTORS ARE INDISPENSIBLE PARTIES, CLAIMS AGAINST KINDERHOOK SHOULD BE STAYED PURSUANT TO RULE 19...............13

CONCLUSION............................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................7

*Bible Truth Crusade v. City of Bloomington*,
709 F. Supp. 849 (C.D. Ill. 1989) .......................................................15

*Burk v. Steve & Barry's Ill., LLC*,
No. 07-CV-0349-MJR, 2008 WL 4900717 (S.D. Ill. Nov. 13, 2008)....................................13

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) .................................................................6

*Chicago Carpenters Council of Carpenters Pension Fund v. Saylor*,
No. 92 C 4731, 1992 WL 333899 (N.D. Ill. Nov. 5, 1992)....................................11

*Chrysler Rail Transp. Corp. v. Ind. Hi-Rail Corp.*,
No. 93 C 5140, 1996 WL 238788 (N.D. Ill. May 7, 1996) ....................................10

*Creative Trade Grp., Inc. v. Int'l Trade Alliance, Inc.*,
No. 08 C 2561, 2010 WL 1541308 (N.D. Ill. Apr. 16, 2010).................................14

*Crosse v. BCBSD, Inc.*,
836 A.2d 492 (Del. 2003) .....................................................................7

*Faulkner v. Kornman (In re The Heritage Org., LLC)*,
413 B.R. 438 (Bankr. N.D. Tex. 2009).....................................................6

*Fed. Life Ins. Co. v. First Fin. Grp. of Texas, Inc.*,
3 B.R. 375 (S.D. Tex. 1980) ..............................................................2, 11

*Freeman v. N.W. Acceptance Corp.*,
754 F.2d 553 (5th Cir. 1985) ...............................................................13

*Gay v. AVCO Fin. Serv. Inc.*,
769 F. Supp. 51 (D.P.R. 1991)..............................................................13

*Great Lakes Overseas, Inc. v. Wah Kwong Shipping Grp., Ltd.*,
990 F.2d 990 (7th Cir. 1993) ................................................................5

*Greenberg v. Miami Children's Hosp. Research Inst., Inc.*,
208 F. Supp. 2d 918, 922 (N.D. Ill. 2002) ...............................................3

*Gruca v. Alpha Therapeutic Corp.*,
    19 F. Supp. 2d 862 (N.D. Ill. 1998) ..................................................................5

*Hanson v. Denckla*,
    357 U.S. 235 (1958) .......................................................................................4

*Harco Nat'l Ins. Co. v. Green Farms, Inc.*,
    CIV A. No. 1131, 1989 WL 110537 (Del. Ch. Sept. 19, 1989) ...............................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .......................................................................................4

*In re Fiddler's Creek, LLC*,
    No. 9:10-bk-03846-ALP, 2010 WL 6618876 (Bankr. M.D. Fla. Sept. 15, 2010) ...................12

*In re Foxmeyer Corp.*,
    290 B.R. 229 (Bankr. D. Del. 2003) ..............................................................7, 8

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*,
    140 B.R. 969 (N.D. Ill. 1992) ........................................................................12

*In re Moll Indus., Inc.*,
    454 B.R. 574 (Bankr. D. Del. 2011) ...............................................................6

*Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*,
    356 F.3d 731 (7th Cir. 2004) .......................................................................11

*Johnson & Johnson v. Coopervision, Inc.*,
    720 F. Supp. 1116 (D. Del. 1989) ................................................................13

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
    529 F.3d 371 (7th Cir. 2008) ......................................................................5, 6

*Key v. Liquid Energy Corp.*,
    906 F.2d 500 (10th Cir. 1990) ......................................................................9

*Koch Refining v. Farmers Union Cent. Exch., Inc.*,
    831 F.2d 1339 (7th Cir. 1987), *cert. denied*, 485 U.S. 906 (1988)..........................10

*MacDonald v. Hinton*,
    361 Ill. App. 3d 378, 836 N.E.2d 893 (Ill. App. Ct. 2005)......................................9

*McIlwee v. ADM Indus., Inc.*,
    17 F.3d 222 (7th Cir. 1994) .........................................................................4

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*,
    623 F.3d 440 (7th Cir. 2010) ........................................................................4

*N. Shore Gas Co. v. Salomon, Inc.*,
    896 F. Supp. 786 (N.D. Ill. 1995) ..................................................................13

*Okla. Oil & Gas Exploration Drilling Program 1983-A v. W.M.A. Corp.*,
    877 P.2d 605 (Okla. Civ. App. 1994) ..............................................................9

*Poulsen Roser A/S v. Jackson & Perkins Wholesale, Inc.*,
    No. 10 C 1894, 2010 WL 3419460 (N.D. Ill. Aug. 26, 2010) ...................5

*Sudbury, Inc. v. Escott (In re Sudbury, Inc.)*,
    140 B.R. 463 (Bankr. N.D. Ohio 1992) ...........................................................11

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008) ..................................................................8

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) ...........................................................................7

*Trimec, Inc. v. Zale Corp.*,
    150 B.R. 685 (N.D. Ill. 1993) ....................................................................11, 12

*Triune Star, Inc. v. Walt Disney Co.*,
    No. 07-1256, 2008 WL 3849913 (C.D. Ill. Aug. 14, 2008) ....................5, 9

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
    752 A.2d 1175 (Del. Ch. 1999) .....................................................................7, 8

## STATUTES

11 U.S.C. § 362 ............................................................................ *passim*

11 U.S.C. § 541 ............................................................................10

28 U.S.C. § 157 ............................................................................14

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ..........................................................................7

Fed. R. Civ. P.9 ...........................................................................7

Fed. R. Civ. P.12 .........................................................................*passim*

Fed. R. Civ. P.19 ..........................................................1, 13, 14, 15

Defendant Kinderhook Capital Fund II, L.P. ("Kinderhook") respectfully submits this Memorandum of Law in support of its motion (the "Motion") to dismiss the counts of the complaint (the "Complaint" or "Compl.") alleged against it pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay these proceedings pursuant to 11 U.S.C. § 362(a) and Rule 19 of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiffs are among the many personal injury claimants who have filed lawsuits over the misuse of portable gasoline containers that were manufactured, tested, marketed and sold by Blitz U.S.A., Inc. ("Blitz"), an Oklahoma corporation, and co-defendants, Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., and Wal-Mart Stores East, L.P. (collectively, "Wal-Mart"), who allegedly sold these containers.  (Compl. ¶ 17.)  Plaintiffs have named Kinderhook in this suit, but Plaintiffs' sole allegations against Kinderhook relate to Kinderhook's alleged corporate relationship to Blitz.  Those allegations go no further than the baseless claim that Kinderhook, together with co-defendant LAM 2011 Holdings, LLC ("LAM 2011 Holdings"), "exercise[d] . . . dominion" over Blitz.  (*Id.* ¶ 65.)  The Complaint does not, and cannot, allege a single fact in support of Kinderhook's purported "dominion" over Blitz.  As the Complaint itself makes clear, Kinderhook was merely a partial and indirect investor in Blitz.  (*Id.* ¶¶ 59-66.)

This lawsuit, and lawsuits like it, pushed Blitz and its subsidiaries and parents, including Defendants LAM 2011 Holdings, Blitz Acquisition Holdings, Inc., Blitz Acquisition, LLC, Blitz RE Holdings, LLC, and F3 Brands, LLC (collectively, the "Debtor Defendants") to file for bankruptcy protection in the United States Bankruptcy Court of the District of Delaware under Chapter 11 of the of the United States Bankruptcy Code (the "Bankruptcy Code").  Pursuant to

---

[1]   Kinderhook submits this Motion by special appearance and does not waive any rights or defenses to lack of personal jurisdiction by this special appearance.

1

the Bankruptcy Code's "automatic stay" provisions set forth in 11 U.S.C. § 362(a), all proceedings against the Debtor Defendants have been stayed.  *See* Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings [ECF No. 7] (Nov. 14, 2011).

Against this background, even a cursory review of Plaintiffs' Complaint shows that this case has nothing to do with Kinderhook.  Plaintiffs believe Blitz was the wrongdoer but have thrown Kinderhook into the fray, believing Kinderhook to be a deep pocket.  Such tactics, wholly unsupported by a single relevant factual allegation, should not be condoned.

*First*, Kinderhook should be dismissed from this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because this Court lacks personal jurisdiction over Kinderhook. The Complaint makes clear that Kinderhook itself had no involvement with the conduct alleged in the Complaint and, because Kinderhook has never done business in the State of Illinois, it is not subject to this Court's jurisdiction.  *Second*, Kinderhook should be dismissed from this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To properly plead a claim, a plaintiff must allege more than bare legal conclusions, labels, or a formulaic recitation of the elements of a cause of action.  Here, Plaintiffs' allegations are insufficient as a matter of law, and cannot survive a motion to dismiss.  *Third*, even if the claims against Kinderhook did not warrant dismissal — and they do — those claims should be stayed pending resolution of the Debtor Defendants' bankruptcy.  Proceeding with Plaintiffs' claims against Kinderhook without the participation of the Debtor Defendants risks exposing Defendants to multiple trials of identical issues with inconsistent determinations and would be a waste of scarce judicial resources.

## FACTS

Kinderhook is a Delaware limited partnership with a registered office in Delaware. (Compl. ¶ 12; Aff. of Christian Michalik in Supp. of Kinderhook Capital Fund II, L.P.'s Mot. to Dismiss ("Michalik Aff.") at ¶¶ 4-5.)  Kinderhook is managed by Kinderhook Industries, LLC

("Kinderhook Industries"), a Delaware limited liability company operating as a private equity firm.  (*Id.* at ¶¶ 3-4.)  Kinderhook is not authorized, nor has it sought authorization, to do business in the State of Illinois as a foreign corporation.  (*Id.* at ¶ 7.)  Kinderhook has no offices, registered agents, directors, officers, or employees in Illinois, nor does it own or lease property, maintain bank accounts, or maintain an address or telephone listing in the state.  (*Id.* at ¶ 10.)

Plaintiffs' Complaint contains no allegations tying Kinderhook to the design, manufacture, or sale of the plastic gas cans at issue in this suit.  Kinderhook is merely a fund that indirectly owns a stake in a Blitz affiliate and does not design, manufacture, or sell plastic gas cans.  (*Id.* at ¶ 13.)  The Complaint asserts bare conclusions that Kinderhook and LAM 2011 Holdings exercise complete dominion over the company that indirectly owns Blitz.  (Compl. ¶ 65.)  The Complaint further alleges — again in a bare and conclusory way — that LAM 2011 Holdings and Kinderhook used their control to divert the corporate assets and profits of Blitz, leaving Blitz under-capitalized and without the funds to pay a judgment against it.  (*Id.* at ¶ 66.)  Plaintiffs offer no factual support for these allegations.

## ARGUMENT

**I.    DISMISSAL PURSUANT TO RULE 12(b)(2) IS PROPER BECAUSE THE COURT LACKS JURISDICTION OVER KINDERHOOK**

Kinderhook is not an Illinois company.  It is an investment vehicle organized under Delaware law and doing business in New York.[2]  (Michalik Aff. at ¶¶ 4-5.)  It is not authorized, nor has it sought authorization, to do business in the State of Illinois as a foreign corporation.  (*Id.* at ¶ 7.)  In light of Kinderhook's nonresident status in Illinois, for this Court to assert

---

[2]    Where a defendant moves to dismiss a complaint based on lack of personal jurisdiction pursuant to Rule 12(b)(2), the court may decide the motion on the pleadings and affidavits.  *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F. Supp. 2d 918, 922 (N.D. Ill. 2002).  The Affidavit of Christian Michalik is filed with the Court with respect to the personal jurisdiction argument and is not intended to apply to arguments raised by Kinderhook pursuant to Rule 12(b)(6), as the Court must decide the motion under this Rule on the basis of the pleadings alone.

personal jurisdiction over it, Plaintiffs bear the burden of demonstrating that such jurisdiction exists. *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1994).[3]

A.      **Kinderhook Lacks Minimum Contacts With Illinois To Justify Specific Jurisdiction**

Plaintiffs' attempt to have this Court exercise jurisdiction over Kinderhook fails under established Supreme Court and Seventh Circuit precedent because Kinderhook has not "purposefully availed" itself of the privilege of doing business in Illinois.  (Michalik Aff. at ¶¶ 7-10.)  Furthermore, none of Kinderhook's business — which is as an investment vehicle — relates to Plaintiffs' allegations in this action, which concern the design, manufacture, and sale of gas cans.  (*Id.* at ¶¶ 5-6, 8-9.)  Kinderhook lacks the minimum contacts with Illinois that due process requires "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal citation omitted).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Plaintiffs have pleaded no such act, nor can they.

Kinderhook did not "purposefully direct" its activities at Illinois, nor does the alleged injury arise out of any activities Kinderhook undertook in Illinois.  *Mobile Anesthesiologists Chicago, LLC,* 623 F.3d at 444.  Plaintiffs' sole allegation regarding Kinderhook's tie to Illinois is that Kinderhook is an indirect partial investor in a company whose goods are sold in the jurisdiction.  However, even if Blitz were a direct subsidiary of Kinderhook — and it is not —

---

[3]    The Seventh Circuit has held the reach of the Illinois long arm statute to be coterminous with the limits on personal jurisdiction imposed by the Due Process Clause of the United States Constitution.  *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) ("Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution.  We have held that there is no operative difference between these two constitutional limits." (internal citation omitted)).

such a relationship would still not be sufficient to establish specific jurisdiction. *See Triune Star, Inc. v. Walt Disney Co.*, No. 07-1256, 2008 WL 3849913, at *3 (C.D. Ill. Aug. 14, 2008). Because there is no connection between Kinderhook and Plaintiffs' allegations in this action, this Court lacks personal jurisdiction over Kinderhook under traditional notions of fair play and substantial justice and, thus, under Illinois law.

**B.    Kinderhook Is Not An Alter Ego Of Blitz And Is Therefore Not Subject To Derivative General Jurisdiction Under Illinois Law[4]**

Plaintiffs' conclusory allegation that Kinderhook exercises complete dominion over Blitz (*see* Compl. ¶ 65) is insufficient as a matter of law to establish derivative jurisdiction. *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 870 (N.D. Ill. 1998) (granting motion to dismiss for lack of personal jurisdiction where plaintiff failed to plead facts that the defendant exerted substantial control over its subsidiary). In Illinois, a corporation is presumed to be a legal entity separate and distinct from its shareholders, directors, and officers. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). To disregard the presumption that related companies are separate entities for purposes of jurisdiction, plaintiff must demonstrate that between them there is "such unity of interest and ownership that the separate personalities [of the corporations] no longer exist." *Great Lakes Overseas, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 990 F.2d 990, 996 (7th Cir. 1993) (internal quotation omitted). Plaintiffs' bare allegation that Kinderhook used its "control to divert the corporate assets and profits of [Blitz]" (Compl. ¶ 67), does not demonstrate that Kinderhook exercised dominion over Blitz in respect to the alleged injury and thus provide no basis for personal jurisdiction over

---

[4]    In the evaluation of personal jurisdiction under an alter ego or corporate veil piercing theory, Illinois Federal Courts have consistently applied Illinois state law regardless of the state of incorporation for the entity plaintiff seeks to pierce. *See, e.g., Poulsen Roser A/S v. Jackson & Perkins Wholesale, Inc.*, No. 10 C 1894, 2010 WL 3419460 (N.D. Ill. Aug. 26, 2010).

Kinderhook.  *See Judson Atkinson Candies, Inc.*, 529 F.3d at 379.[5]

## II.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) AS IT FAILS TO SET FORTH SUFFICIENT BASIS TO JUSTIFY PIERCING THE CORPORATE VEIL

To state a veil piercing claim against Kinderhook, Plaintiffs must plead facts sufficient to disregard the corporate form of three Delaware corporations and one Oklahoma corporation. (*See* Compl. ¶¶ 59-66.)  Under Illinois choice of law rules, veil piercing claims are assessed under the law of the state of incorporation of each relevant entity.  *See Judson Atkinson Candies, Inc.*, 529 F.3d at 378.  Defendants LAM 2011 Holdings, Blitz Acquisition Holdings, Inc., and Blitz Acquisition, LLC were incorporated in Delaware, while defendant Blitz was incorporated in Oklahoma.  (Compl. ¶¶ 3-4, 6-7.)  Accordingly, to hold Kinderhook liable for any alleged wrongdoing by Blitz, Plaintiff would need to plead facts sufficient under Delaware law to pierce the veils of the first three of those corporations, and under Oklahoma law to pierce Blitz's veil. *Faulkner v. Kornman (In re The Heritage Org., LLC)*, 413 B.R. 438, 514 (Bankr. N.D. Tex. 2009) (applying Delaware law) ("the Delaware two-pronged test must be applied to, and satisfied at, each level or layer of ownership"); *In re Moll Indus., Inc.*, 454 B.R. 574, 587 (Bankr. D. Del. 2011) (citing *Faulkner* favorably and stating that its holding applies in cases where plaintiffs seek to hold the entire corporate chain liable).  Plaintiffs' bare allegations are insufficient to pierce a single corporate veil, much less four.

The Complaint does not satisfy the pleading standards of the Federal Rules of Civil Procedure, nor does it offer a single allegation sufficient to meet the exacting requirements of veil piercing under Delaware law.  "Persuading a Delaware Court to disregard the corporate

---

[5]   Even assuming that personal jurisdiction is proper against Blitz, therefore, this Court does not as a result have jurisdiction over Kinderhook.  The Seventh Circuit has made clear that "where corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000).

entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). Under Delaware law, "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). And, "[u]nder Delaware law fraud is never presumed. Rather, it must be proven to the satisfaction of the finder of fact." *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, CIV A. No. 1131, 1989 WL 110537, at *5 (Del. Ch. Sept. 19, 1989). It follows that Plaintiffs must plead Count IV with particularity pursuant to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (applying 9(b) pleading standard to claims sounding in fraud).

Plaintiffs fail entirely with their allegations in Count IV. Plaintiffs' allegations do not put Kinderhook on notice of the substance of their claims, much less plead the requisite elements with particularity. The Complaint is silent as to the time, place and content of any alleged misrepresentation or any examples of specific fraudulent conduct that are representative of a fraudulent scheme. Indeed, offering nothing more than bare legal conclusions, Plaintiffs' veil piercing claim fails even under the less exacting pleading standards of Rule 8, which require that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotation omitted).

As to the elements of veil piercing, the Delaware courts have established a two-part test to determine whether a complaint states a claim, s*ee In re Foxmeyer Corp.*, 290 B.R. 229, 237 (Bankr. D. Del. 2003), and Plaintiffs' pleadings do not satisfy either prong of that test. First, Plaintiffs fail to plead facts demonstrating that Kinderhook and Blitz operated as a single entity.

*Id.* at 235.   Delaware law requires an extremely high degree of control between parent and subsidiary to pierce the veil: "exclusive domination and control . . . to the point that the [subsidiary] no longer ha[s] legal or independent significance of [its] own."   *Wallace ex rel. Cencom Cable Income Partners II, Inc.*, 752 A.2d at 1184 (internal quotation omitted).   The Complaint's allegation that Kinderhook — together with LAM 2011 Holdings — "exercise[d] complete dominion" over Blitz (Compl. ¶ 65), simply repeats the legal standard with no supporting facts.   Those allegations do not set forth the manner in which Kinderhook or LAM 2011 Holdings allegedly exercised control over Blitz.   Nor do they offer a single fact to support the requirement that Blitz lacked independent legal and operational significance.   *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529 (D. Del. 2008) (refusing to pierce the veil despite allegations of undercapitalization and noting that undercapitalization is only relevant "if such subsidiary was inadequately capitalized and/or insolvent from its inception or such adverse status was caused by acts of the subsidiary's parent").   On the contrary, the Complaint is replete with allegations about Blitz's own, independent business — namely designing, manufacturing and selling gasoline containers.   (*See, e.g.*, Compl. ¶¶ 14-16, 24-43.)

Second, Plaintiffs fail to plead any facts to suggest that "fraud or similar injustice" is present in Kinderhook's use of the corporate form.   *In re Foxmeyer Corp.*, 290 B.R. at 236. Delaware law requires a showing that the corporation is a sham that exists for no other purpose than as a vehicle for fraud to pierce the corporate veil.   *Wallace ex rel. Cencom Cable Income Partners II, Inc.*, 752 A.2d at 1184 (dismissing the veil piercing claim for failing to meet this standard).   Plaintiffs' wholly unsupported allegation that Kinderhook used control of Blitz to "divert [Blitz's] corporate assets and profits" (Compl. ¶ 66) is insufficient.   Plaintiffs do not, and cannot, allege that the three Delaware corporations in the chain of corporate ownership between

Blitz and Kinderhook existed for no other purpose than as vehicles for fraud.[6]

Consequently, Plaintiffs cannot state a basis for liability as to Kinderhook, and this Court should dismiss Plaintiffs' claims against it.  *Triune Star*, 2008 WL 3849913, at *4 (disregarding legal conclusions presented as factual allegations and dismissing claim).[7]

## III.    EVEN IF CLAIMS AGAINST KINDERHOOK ARE NOT DISMISSED, THEY SHOULD BE STAYED PURSUANT TO 11 U.S.C. § 362(a)

Even if the Court decides not to dismiss claims against Kinderhook, those claims should nevertheless be stayed pursuant to section 362(a) of the Bankruptcy Code, which imposes an "automatic stay" prohibiting parties from undertaking certain actions against a bankruptcy debtor and/or its property, including an automatic stay of all actions and proceedings against the debtor or any attempt to "obtain possession of property of the estate."  11 U.S.C. § 362(a).  Not only are Plaintiffs' alleged veil piercing claims the property of the estate, such that they fall within the automatic stay requirements of § 362(a)(3), but Kinderhook's identity of interest in this suit with the Debtor Defendants also requires extension of the automatic stay provisions pursuant to § 362(a)(1).

---

[6]   Nor does Plaintiffs' Complaint set forth allegations sufficient pierce Blitz's corporate veil under Oklahoma law, which is substantially similar to the Delaware test.  Oklahoma law has established a two-prong standard to evaluate whether a corporation is a mere instrumentality of another corporation such that veil piercing is warranted.  *Key v. Liquid Energy Corp.*, 906 F.2d 500, 503-04 (10th Cir. 1990).  As with the Delaware test, Plaintiffs fail to satisfy either prong.  First, Plaintiffs do not, and cannot, plead facts demonstrating that Blitz is "so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct" of its indirect and partial investor, Kinderhook.  *Okla. Oil & Gas Exploration Drilling Program 1983-A v. W.M.A. Corp.*, 877 P.2d 605, 609 (Okla. Civ. App. 1994).  Second, Plaintiffs have failed to plead any facts to support the allegation that the corporate structure was used to defeat public convenience, justify wrong, perpetuate actual or implied fraud, or to defend crime.  *See Key*, 906 F.2d at 504 (reversing lower court and refusing to pierce the corporate veil, stating that plaintiffs could not meet their burden "by a simple showing that the parent wholly owns the subsidiary, or that the corporations share some personnel").

[7]   As Kinderhook bears no liability as a tortfeasor, Count VIII against Kinderhook for reimbursement under the Family Expense Act must also be dismissed.  *See, e.g., MacDonald v. Hinton*, 361 Ill. App. 3d 378, 388, 836 N.E.2d 893, 902 (Ill. App. Ct. 2005) (affirming dismissal of Family Expense Act claims where underlying tort claims were also dismissed).

**A.      Veil Piercing Claims Are Property Of The Estate And Are Automatically Stayed**

Because Plaintiffs' veil piercing claims are the property of the bankrupt estate under Illinois law, those claims must be stayed pursuant to § 362(a)(3).  *See Chrysler Rail Transp. Corp. v. Ind. Hi-Rail Corp.*, No. 93 C 5140, 1996 WL 238788, at *1 (N.D. Ill. May 7, 1996). Section 362(a)(3) provides that "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is automatically stayed upon filing of the bankruptcy petition.  The estate of the debtor includes all interests the debtor may have in property, as of the commencement of the case, and any interest in property the trustee may recover according to its powers provided by the Bankruptcy Code.  *See* 11 U.S.C. § 541.  "Thus, the debtor's property extends to include any cause of action that the trustee may be entitled to prosecute against third parties for the benefit of the estate and, ultimately, its creditors."  *Chrysler Rail Transp. Corp.*, 1996 WL 238788, at *1 (internal quotation omitted).

The automatic stay provision of § 362(a)(3) will suspend a plaintiff's prosecution of claims against a debtor's shareholder, such as Kinderhook, if those claims are the property of the estate.  *Id.* at *2.  A corporate veil piercing claim, such as that asserted by Plaintiffs against Kinderhook, belongs to the estate because "rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate which the trustee alone has the right to pursue after the filing of a bankruptcy petition." *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987), *cert. denied*, 485 U.S. 906 (1988); *see also Chrysler Rail Transp. Corp.*, 1996 WL 238788 (finding that a claim for piercing the corporate veil belonged to the debtor's estate and thus extending automatic stay to shareholder co-defendant of debtor).  If the estate decides to prosecute a veil piercing claim against Kinderhook — meritless though that claim would be — that is a matter for

the estate. Accordingly, Plaintiffs' veil piercing claim against Kinderhook — a claim that is the property of the estate — must be stayed if is not dismissed.

**B.     Kinderhook's Alleged Derivative Liability Constitutes An Identity Of Interest And Provides An Independent Ground For Extending the Automatic Stay**

Kinderhook also has separate and independent grounds for a stay pursuant to 11 U.S.C. § 362(a)(1). The automatic stay of claims against the Debtor Defendants should extend to Plaintiffs' claims against Kinderhook because the Debtor Defendants could possibly be bound by any judgment against Kinderhook in favor of the Plaintiff. Moreover, a decision on Plaintiffs' claims against Kinderhook may lead to conflicting judgments in the Bankruptcy Court — and waste valuable judicial resources. *Trimec, Inc. v. Zale Corp.*, 150 B.R. 685, 686-87 (N.D. Ill. 1993) (extending automatic stay to debtor's co-defendants).

The prohibition against the initiation or continuation of litigation against a debtor in bankruptcy proceedings extends to litigation against a third-party, such as Kinderhook, when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *Trimec, Inc.*, 150 B.R. at 688. There is just such an identity of interest here. Under Illinois law, "[p]iercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim." *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004). Consistent with that foundational principle, at least one Illinois District Court has stated that an "alter ego theory seems to raise significant concerns" implicating the need to extend the stay due to the identity of interest. *Chicago Carpenters Council of Carpenters Pension Fund v. Saylor*, No. 92 C 4731, 1992 WL 333899, at *1 n. 1 (N.D. Ill. Nov. 5, 1992) (dismissing the complaint on other grounds

and not reaching the issue of extending the stay).[8]

While questions regarding the scope of the automatic stay are often determined by the bankruptcy court, it is well-settled that other courts in which litigation implicating the debtor or the debtor's property may be pending also have authority to construe and apply the provisions of the automatic stay.  *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 973 (N.D. Ill. 1992).  For instance, in *Trimec*, the debtor's request that the bankruptcy court extend the automatic stay to its co-defendants was denied, with the recommendation that those co-defendants instead seek a stay directly from the district court.  150 B.R. at 686.  The Debtor Defendants similarly sought an extension of the automatic stay from the Delaware Bankruptcy Court at the First Day Hearing and, although Judge Walsh denied the request for a temporary restraining order enjoining litigation against co-defendants of the debtors, including Kinderhook, he recommended that the parties seek stays from the individual District Courts.  *See* Ex. A.   Judge Walsh also recommended that the District Courts grant those stays pending resolution of the bankruptcy.  In Judge Walsh's words:

> I would say to the judge, "I'm going to be highly prejudiced by [the Debtors] dropping out, because that means that I have to try this matter twice."  If I were the judge, I would say, "Stay. Put them on a hold, 3 months, 6 months, see what happens in the bankruptcy."

*Id.*  Kinderhook would be highly prejudiced by the continuation of this litigation against it while the case against the Debtor Defendants is stayed.  Since the only allegations against Kinderhook

---

[8]    Courts in other jurisdictions routinely include a claim for corporate veil piercing within the automatic stay because such a claim merely seeks to "impose liability on the shareholder for the corporation's debts [and] is *not* an independent claim or cause of action."  *In re Fiddler's Creek, LLC*, No. 9:10-bk-03846-ALP, 2010 WL 6618876, at *2 (Bankr. M.D. Fla. Sept. 15, 2010) (emphasis in original); *see also Sudbury, Inc. v. Escott (In re Sudbury, Inc.)*, 140 B.R. 463, 463 (Bankr. N.D. Ohio 1992) (enforcing the automatic stay as to non-debtor co-defendants with alleged derivative liability because "it is not plausible that the defendants in these actions could be found liable to Plaintiffs except on facts that would impose liability on the Debtor" and thus the "Debtor asserts credibly that under these circumstances its liability may be determined on collateral estoppel principles in Plaintiffs' actions"); *Fed. Life Ins. Co. v. First Fin. Grp. of Texas, Inc.*, 3 B.R. 375, 376 (S.D. Tex. 1980) (staying claims in pre-petition lawsuit against debtor and non-debtor co-defendants because allegations "are inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding" and to allow case to proceed "would not be conducive to judicial economy and would unduly hinder the efforts of the Bankruptcy Court").

are derivative of Plaintiffs' claims against the Debtor Defendants, Kinderhook may have to try the same issues twice, and may find itself subject to conflicting judicial determinations. Likewise, given that Plaintiffs' claims against Kinderhook hinge on their underlying claims against the Debtor Defendants, the Debtor Defendants may find themselves bound by this Court's judgment on Plaintiffs' claims against Kinderhook, despite the Debtor Defendants' nonparticipation in the case.  Consequently, the claims against Kinderhook should be stayed pursuant to 11 U.S.C. § 362(a)(1) pending resolution of the bankruptcy.

## IV.   BECAUSE DEBTORS ARE INDISPENSIBLE PARTIES, CLAIMS AGAINST KINDERHOOK SHOULD BE STAYED PURSUANT TO RULE 19

In the event the Court determines that Debtor Defendants should be dismissed from this suit, the Court should stay all claims against Kinderhook pursuant to Federal Rule of Civil Procedure 19, as well as for reasons of judicial economy.  Illinois courts frequently grant a stay pursuant to Rule 19 where, as here, the debtor is an indispensable party.  *See, e.g., Burk v. Steve & Barry's Ill., LLC*, No. 07-CV-0349-MJR, 2008 WL 4900717 (S.D. Ill. Nov. 13, 2008).

All of the Debtor Defendants are "parties to be joined if feasible" under Rule 19(a). When a parent corporation is sued under a veil piercing claim and the parent's liability is purely derivative, the subsidiary corporations that plaintiff seeks to pierce are necessary parties to the action.  *See Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1128 (D. Del. 1989).[9] According to the allegations of the Complaint, Blitz is responsible for the design and

---

[9]   Cases where Illinois courts have found a subsidiary not to be a necessary party are readily distinguishable as, unlike here, the subsidiaries at issue in those actions were not the exclusive source of potential liability for the parents.  *See, e.g., N. Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 790 (N.D. Ill. 1995) (distinguishing cases where subsidiary was found to be necessary party because each case "addressed claims that involved the subsidiary's actions") (citing *Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc.*, 149 F.R.D. 185, 188 (D. Minn. 1993) (the subsidiary was the primary participant in the activity alleged as the basis for recovery); *Freeman v. N.W. Acceptance Corp.*, 754 F.2d 553, 559–60 (5th Cir. 1985) (the defendant corporation's subsidiary is an indispensable party when it is an "active participant" in the conduct complained of by the plaintiffs); *Gay v. AVCO Fin. Serv. Inc.*, 769 F. Supp. 51, 56 (D.P.R. 1991) (subsidiary was an indispensable party in a case stemming from events in which the subsidiary "acted primarily alone, with only the cooperation and advice of the parent").

manufacture of the allegedly defective item (Compl. ¶ 15), and any potential liability on the part of Kinderhook is solely contingent on a finding of liability for Blitz and the other Debtor Defendants.  Thus, issues of liability and damages for strict liability and negligence will need to be fully adjudicated with respect to Blitz and the other Debtor Defendants before the issue of "piercing the corporate veil" can be reached.  *See Creative Trade Grp., Inc. v. Int'l Trade Alliance, Inc.*, No. 08 C 2561, 2010 WL 1541308 (N.D. Ill. Apr. 16, 2010) (finding that complete relief required joinder of absent party because it was an active participant whose presence would be crucial to determining the issue of liability).

If a Rule 19(a) necessary party cannot be made a party to the case, Rule 19(b) requires the court to consider four factors in deciding whether the action should be dismissed in the absence of the indispensable party.  All four factors are satisfied here.  First, because of Blitz's direct involvement in the underlying claim, there is a substantial possibility of duplicative or inconsistent obligations and any ruling could, as a practical matter, prejudice the ability of the Bankruptcy Court to protect the interests of the estate of the Debtor Defendants and, by proxy, its creditors.  Second, this prejudice could be avoided altogether by simply staying this action until a resolution has been reached by the Bankruptcy Court.  Third, a judgment rendered as to liability without the active participation of the Debtor Defendants would not only be inadequate, but it would also be unjust, as Kinderhook bears no liability without a finding of liability on behalf of Blitz.  Fourth, Plaintiffs have an alternative avenue for adjudicating claims against the Debtor Defendants and need not rely upon a decision in this Court.[10]

Finally, even if this Court finds that Debtor Defendants are not indispensable parties in

---

[10]     Pursuant to 28 U.S.C. § 157(b)(5), the claims may properly be tried by the District Court in Delaware, which would provide a single venue where the claims could be tried more efficiently.  In light of the potential that other plaintiffs may take advantage of this alternative forum, adjudication of these claims before this Court presents a real risk of inconsistent verdicts.

accordance with Rule 19, the Court nevertheless has the inherent power to stay proceedings as required by the interests of justice and judicial economy, and should exercise that power here. *See Bible Truth Crusade v. City of Bloomington*, 709 F. Supp. 849, 852-53 (C.D. Ill. 1989) (ordering stay in the interest of judicial economy until related litigation was complete). A stay in the interests of justice is appropriate for substantially the same reasons that the Court should find that the Debtor Defendants are indispensable parties. Additionally, Plaintiffs would not be harmed by any delay because they have at least one alternative forum in which to litigate their claims. As a practical matter, staying the case against Kinderhook would allow the Debtor Defendants and the Bankruptcy Court time to determine how these claims should proceed, and how best any judgment might be satisfied, in light of the various procedural and financial issues that the Debtor Defendants must now confront.

## CONCLUSION

In view of the foregoing, Kinderhook respectfully submits that, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Counts IV and VIII of the Complaint should be dismissed with prejudice or, in the alternative, stayed pursuant to 11 U.S.C. § 362(a), Rule 19 of the Federal Rules of Civil Procedure, and the Court's inherent power to manage its docket.

Dated: November 29, 2011

**FRESHFIELDS BRUCKHAUS DERINGER US LLP** (LEAD COUNSEL)

Timothy P. Harkness (admission pending)
Pamila Gudkov (admission pending)
601 Lexington Avenue
New York, NY 10022
Tel: (212) 277-4000
Tel: (212) 277-4001

**HEPLERBROOM LLC**

*/s/ Stephen R. Kaufmann*
Stephen R. Kaufmann, #03126728
Michael P. Murphy, #06284342
400 South Ninth Street Suite 100
Springfield, IL 62701
Tel: (217) 993-7146
Fax: (217) 528-3964

***Attorneys for Defendant Kinderhook Capital Fund II, L.P.***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on **November 29, 2011**, I electronically filed the foregoing with the Clerk of the

Court using the CMECF system which will send notification of such filing to the following:

Michael T. Mullen (mtm@episcopeltd.com), and

Vincent Vigil (vincent_vigil@gshllc.com),

and I certify that I have mailed by the United States Postal Service the document to the following

non CMECF participants:  Robert C. Maddox, Richards, Layton & Finger, P.A., One Rodney

Square, 920 North King Street, Wilmington, DE 19801.

HEPLERBROOM, LLC

By: */s/ Stephen R. Kaufmann*
Stephen R. Kaufmann, #03126728
400 S. Ninth St., Suite 100
Springfield, IL 62701
(217) 528-3674 (telephone)
(217) 528-3964 (facsimile)
E-mail:  srk@heplerbroom.com
Attorneys for Defendant,
KINDERHOOK CAPITAL FUND II, L.P.